## McKinney v. Quertermous.

December 5, 1947.

Chester D. Adams, Judge.

Elwood Rosenbaum for appellant.

J. M. Chrisovergi for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

On the 24th day of October, 1946, Richard Paul Burks, a minor child, was placed in the home of Vyola McKinney, who resides at 110 York Street, Lexington, Kentucky, under what is called by the Department of Welfare a boarding home agreement, wherein and whereby the Department of Welfare pays a stipulated boarding price. On the 22d day of May, 1947, Vyola McKinney refused to surrender the child to the Division of Child Welfare. Thereupon, John Quertermous, Commissioner, Department of Welfare, sought to obtain the child through the means of a Writ of Habeas Corpus.

Vyola McKinney responded alleging that the infant, Richard Paul Burks, was placed in her care and custody by representatives of the Welfare Department under an agreement that she would be permitted to keep the child for the period of time prescribed by the Kentucky Revised Statutes 405.260 as a requisite to adoption; that the infant was placed in her home with the understanding that the defendant would have an opportunity to adopt the child; and that she had filed proper papers seeking such adoption.

The matter proceeded to judgment in which the lower court stated that the child received, and is receiving, excellent care and treatment from the defendant but that, since the mother of the child is a feeble-minded person and in the Kentucky Training Home

at Frankfort, the court had no jurisdiction to permit the adoption unless the Department of Welfare of the State of Kentucky gave its consent, and consequently, as a legal matter the prayer of the petition must be granted. Vyola McKinney appealed, the judgment being held in abeyance until the matter could be passed upon by this court. However, since appeal has been taken the matter of adoption has proceeded to judgment, and in a well-considered opinion and judgment the court below granted the adoption. That judgment is also before us, in which the court said in part as follows:

"The Welfare Department through its Commissioner, John Quertermous, objects to these particular petitioners adopting this child and insist that under KRS 405.300(7) this court is without jurisdiction to grant the adoption. From evidence introduced in this court in this proceeding and in the Habeas Corpus proceeding heretofore referred to, it appears the Welfare Department has given its general consent to the adoption of this child and the court so finds. The court is of the opinion and adjudges that such general consent to adoption satisfies the provisions of KRS 405.300(7). Any other interpretation would make this court impotent in such proceedings and would place the ultimate decision regarding adoptions such as this in the Department of Welfare. The court does not believe such to have been the legislative intent. The court further finds that the objections of the Welfare Department to this adoption are, under the circumstances of the case, unreasonable and arbitrary. The court finds and adjudges that the Welfare Department is not authorized by the statute relied upon by it to withhold its consent to this adoption when all other facts in the case obviously authorize it.

"The court makes the above findings although it previously ruled in the Habeas Corpus proceeding that the Department of Welfare was entitled to the legal custody of this child. The petitioner, Vyola McKinney Demus, has performed motherly duties for this child far beyond the meager compensation she was paid by the Welfare Department during practically all of the 12 months of his life when he was most helpless and needed constant care and attention. There is no doubt

but that he has received very excellent care and attention during these tender months and that he has benefited from a love approximating that of a natural mother for her natural child. This court believes it would be unjustifiably cruel to now separate this child from the woman who has loved and cared for it almost all of the first year of its life in view of the fact such love and care does not appear probable for him in the near future in the event this adoption is refused."

From the above, we conclude that the court below, were the matter before it now with the present state of facts, would have refused to grant the prayer of the petitioner in the habeas corpus proceedings, and rightly so.

Wherefore, the judgment is reversed.