Mildred **KANTOROWICZ**, Appellant,

v.

**Berton REAMS** et al., Appellees.

Court of Appeals of Kentucky.

Oct. 16, 1959.

As Modified on Denial of Rehearing

March 4, 1960.

Murray L. Brown, London, Lucien L. Kinsolving, Shelbyville, Roy E. Tooms, Jr., London, for appellant.

Milton J. Luker, Charles R. Luker, Jr., London, for appellees.

STANLEY, Commissioner.

This is an unusual case between the mother of a six-year old boy, Bruce Barton, and the mother's parents involving the boy's adoption and custody. The appeal is by the mother, Mildred Kantorowicz, from a judgment of adoption of the child by his grandparents and the award of his custody to them.

The petition or complaint was filed by the grandparents, Berton and Maggie Reams, seeking to adopt the child and to have his complete custody and control. They charged that insofar as his relations with his mother were concerned the boy was a neglected and abandoned child within the definition of KRS 199.011. The petition named as defendants the child and both of his parents. The child's father answered that he consented to the adoption and desired to make no defense. The mother, a resident of Montana, answered, raising issues as to facts upon which judgment was sought and objecting to the adoption and custody. By counterclaim and cross-action the mother claimed the exclusive custody of her son.

## I.

The validity of the judgment of adoption is the primary question, for if that is correct, custody of the child would follow.

1. One of the functions of the Department of Economic Security is the "Administration and supervision of services to needy, neglected dependent and delinquent children, including adoptions." KRS 195.-020(d). The adoption statutes provide that the Department shall be furnished with two copies of a petition seeking to adopt a minor and charge the Department with the duty to make an investigation and report to the court concerning enumerated conditions. The clerk endorsed on the Petition for Adoption, "Attested copy mailed to Child Welfare." That is the entire record of this feature of the case.

As shown below, the statute authorizes a circuit court to terminate without

their consent rights of parents of a "neglected or abandoned child" and to declare such child to be a ward of the State. KRS 199.600. This recognizes the supremacy of the guardianship of the State over that of the parent. The provisions of KRS 199.600(1, 2) are by reference made a part of the statutes of adoption where consent of both parents has not been given. KRS 199.500. Where adoption is sought upon the ground of abandonment and desertion of the child by the parents, it is all the more important that the Department be made a party to the adoption proceeding in the manner prescribed. Cf. Smith v. Wilson, Ky., 269 S.W.2d 255 and Stanfield v. Willoughby, Ky., 269 S.W.2d 270. Consent of the Department is not a necessary prerequisite to the adoption of a child. McKinney v. Quertermous, 306 Ky. 169, 206 S. W.2d 473. But the statute intends that the court shall at least have the benefit of the Department's investigation and recommendation. The welfare of the child is the paramount consideration. The Department, as an independent agency of the State, as *parens patriae,* is in position to see whether that welfare would be protected and promoted. Cf. Lewis v. Louisville & Jefferson County Children's Home, 309 Ky. 655, 218 S.W.2d 683.

█ Since the authority of the court in an adoption proceeding is to deprive a parent of his child in derogation of his sacred and enduring natural rights and is a special power conferred only by statute, the statutory provisions must be strictly complied with. Higgason v. Henry, Ky., 313 S.W.2d 275.

█ We, therefore, conclude the meager endorsement on the petition that a copy had been "mailed to Child Welfare" and the absence of any report to the court by the Department of Economic Security—at least under the circumstances of this case— makes the adoption unauthorized.

2. The statute, KRS 199.500(1), in pertinent part declares: "No adoption shall be granted without the sworn consent of the living parent or parents of a legitimate child * * * except that such consent of the living parent or parents shall not be required if" the parental rights of the nonconsenting parent have been terminated under KRS 199.600. Subsection (4) of KRS 199.500, however, reads: "Notwithstanding the provisions of subsection (1) of this section, an adoption may be granted without the consent of the natural living parents of a child if it is pleaded and proved as a part of the adoption proceedings that any of the provisions of subsections (1) or (2) of KRS 199.600 exist with respect to such child." That statute, KRS 199.600, specifically relates to the involuntary termination of all parental rights, the primary condition as defined in subsection (1) being that the child shall be a "neglected or abandoned child, as defined in KRS 199.011," and subsection (2) provides that the rights of one parent only may be terminated. KRS 199.011, as amended in 1952, Ch. 83, defines a neglected or dependent child as one who is under such improper parental care and control or guardianship as to injure or endanger the morals, health, or welfare of the child or others. Abandoned child is defined as one who by reason of the desertion of his parents or guardian is in destitute circumstances.

█ As heretofore stated, only the father of the subject child consented to the adoption by his grandparents and his mother vigorously objected and contested the adoption. Consent of both parents is necessary unless the case falls within the exception prescribed in the statute. Higgason v. Henry, Ky., 313 S.W.2d 275.

█ The summary of the evidence in relation to the question of custody of the child given below we regard as not establishing any such condition as would forfeit the legal right of the mother and authorize the adoption of the child over her objection. Separation to constitute aban-

**272**

donment and neglect must be wilfull and harsh.

The judgment relating to the adoption of the child is erroneous.

## II.

The decision as to the care and custody of a child, independent of adoption, is on a different plane. There is no severance of legal ties by such a judgment. The judgment may only separate the child and his parent for the time being, for it may be opened up for modification as changed conditions require. Unlike adoption, a proceeding involving custody of the child is not statutory but is of equitable cognizance and jurisdiction. But our statutes recognize the paramount right of a surviving parent to the custody and care of his or her minor child when "suited to the trust." KRS 405.020. The trifling, unworthy father of the child involved here makes no claim to him. While custody primarily and normally should be given a parent, we have several times held that where a parent has grossly neglected his or her child or is unfit for the trust, he or she forfeits the right to custody and the child's grandparents may retain custody.

Mildred Reams, the mother of this child, Bruce Barton, ran away and married his father, Floyd Barton, in February, 1950. They separated four or five months later, and she returned to the home of her parents to live. The child, Bruce, was born in the London hospital October 17, 1950. Some two months later the mother went to Cincinnati with her baby to seek work; but being unable to find it, she returned to her parents' home and obtained a job as a waitress in a London restaurant. In May, 1951, the mother again went to Cincinnati for work but left the child with his grandparents. Her husband found her there and persuaded her to begin their marital life anew. They went to Oregon where the then Mrs. Barton got a position teaching school, and another child was born in May, 1952. The mother's uncontradicted testimony is that her husband would not work and was away from home a good deal. She had to support herself, her second and a third child, as well as support her husband. She returned to London in 1953 and again worked in a restaurant. She then asked her parents to let her take Bruce to Oregon, but they refused. She rejoined her husband, and they moved to Chester, Montana, in the late summer of 1953 where she obtained a teaching position. She came back to London in the summer of 1954 with her two children. While she was there, her husband skipped out and was later convicted of a felony in Nebraska. Mrs. Barton divorced him in April, 1956. Custody of the children was awarded the mother in the divorce proceeding; but as the oldest, Bruce, was not within the jurisdiction of the court, the mother makes no claim now under that judgment.

Not long after her divorce, Mrs. Barton married Frank Kantorowicz. He is shown to be a prosperous farmer living near Chester, Montana. In this proceeding, several local witnesses testified to the high standing and good reputation of both Mr. and Mrs. Kantorowicz. After her second marriage, the mother unsuccessfully sought to recover the custody of her son Bruce by habeas corpus. The present suit, instituted by her parents, was filed soon thereafter.

The appellees concede that their daughter wrote them almost monthly when she was away, but she sent only a few items of clothing and the like and only $20 in cash during the several years. The mother testified that she sent more money as well as gifts and did all she could to help maintain Bruce. She lists several dates upon which such remittances had been made and adds that other letters enclosing money were not mailed by her husband. She found the envelopes opened with the money therein gone. She had had long distance telephone calls to her child and her parents at Christmas time while she was away.

The grandparents, who are now about 62 and 63 years old, are God-fearing, estimable

people. They live in a small house on 95 acres of land about three miles from London. The land is not very productive. The grandfather is afflicted with arthritis. The grandmother works one day a week in a restaurant in town. The grandmother's aged and infirm father and an unmarried daughter live with them. In contrast, the stepfather owns 800 acres of land with a commodious residence on it and cultivates an additional 300 acres under lease. His neighbors speak in the highest terms of his character and kindness. He has been a member of the local board of education by election for the past eight years. He testified that he wanted his wife to have Bruce's custody.

The mother's sister and her husband who live in Shelby County testified to the insufficiency of discipline of Bruce by the grandparents and to the firm discipline and good manners and behavior of Mrs. Kantorowicz's other children. They describe the grandparents' small home and environment and express the view that Bruce would be better off with his mother and stepfather. The neighbors of Mr. and Mrs. Kantorowicz testified that they are doing a good job rearing the other two Barton children and their own child.

The circuit court found that the grandparents had provided well for the child and stated that he had observed the boy and his strong affection for the grandparents and his disturbance over the possibility of being required to leave them and go with his mother, whom he treated as a stranger. We can well understand all of that. But we must realize also that this little boy has not reached such an age of discretion that his wishes should be of conclusive import. The grandparents have the immense satisfaction and rich reward of having done well in keeping and rearing the child during his tenderest years. Whatever neglect may be attributed to the mother, it appears not to have been of her own volition. She seems to have done the best she could. All of the parties were the victims of unfortunate circumstances.

Breaking the child's lifelong ties of his home and tender love and causing almost inconsolable grief of the grandparents puts the conscience of the court to test. But the mother's love must not be forgotten. Nor her legal statutory right. KRS 405.-020. In viewing the whole picture, we must discern the cardinal object which is of the welfare, present and future, of this little boy, whose life has been caught between competing forces. Doubtless, his emotional upset by the severance of his lifelong ties will clear up when he comes to know his mother and his brothers and sisters. It is well for him to be reared with them and to have advantages and opportunities he does not now have.

In several cases we have held that custody of a child should be given or retained by his grandparents in preference to one or the other of his parents. A recent case is Shaw v. Graham, Ky., 310 S.W.2d 522. Several conditions in that case are like conditions presented here. But the consideration of several other material factors led us to the conclusion that the fundamental welfare of the two children in the Shaw case would be better conserved by leaving them in the care of their grandparents. An important, if not controlling, difference in the two cases is the instability of the mother in the Shaw case in contrast to the character and situation of the mother in the present case.

Each case of this kind must be decided according to its own material facts and circumstances, determined by well-known controlling considerations. Among these is the favor of maintaining natural family relations and the legal right of a parent to the custody of a child if the parent is a suitable and fit person. Cf. Stapleton v. Poynter, 111 Ky. 264, 62 S.W. 730, 23 Ky.Law Rep. 76, 53 L.R.A. 784, 98 Am. St.Rep. 411. Our serious and sympathetic consideration of the whole case leads us to the conclusion that the court was in error in refusing to award the custody of the child to his mother.

The judgment is reversed with directions to enter another conforming to this opinion.

BIRD, J., not sitting.