RENDERED: MAY 1, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1099-ME

L.R.  APPELLANT

APPEAL FROM POWELL CIRCUIT COURT
v.  HONORABLE MONICA LACY, JUDGE
ACTION NO. 24-AD-00003

S.A.; C.A.; T.C.; AND K.J.L., A
MINOR CHILD  APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ACREE, A. JONES, AND KAREM, JUDGES.

ACREE, JUDGE: This appeal arises from an order terminating L.R.'s parental

rights in a private adoption action brought pursuant to Kentucky Revised Statutes

(KRS) 199.502. L.R. contends that the matter should have been dismissed because

the Powell Circuit Court, Family Division, did not rule on the termination of his

rights within 30 days of the hearing as mandated in KRS 625.090(6) and thereby

violated his due process rights and that there was insufficient evidence to support the circuit court's decision.  We reverse and remand.

## BACKGROUND

L.R. (the Father) and T.C. (the Mother) are the biological parents of K.L. (the Child), born in 2021.  The Father did not know the Child was his until December 2022.  The Mother has an older son, who is the Child's half-sibling. The half-sibling's father is the (now deceased) son of S.A. (the Adoptive Father) and stepson of C.A. (the Adoptive Mother) (collectively, the Adoptive Parents). The Adoptive Parents are not related by blood to the Child.  The Child and the half-sibling were removed by social services in November 2022 and placed with the Adoptive Parents.  The Adoptive Parents were granted permanent custody of the Child by the Pulaski Family Court in 2023 (Case No. 22-J-00001-002)[1] and of the half-sibling in a separate action.

In January 2024, the Adoptive Parents filed a petition pursuant to KRS 199.502 seeking to adopt the Child and terminate the parental rights of the Child's biological parents.[2]  In the petition, the Adoptive Parents alleged that it would be in the Child's best interest to terminate parental rights and that the

---

[1] The record of the juvenile action was not introduced at the hearing and therefore is not in the certified appellate record.

[2] The Adoptive Parents also petitioned to adopt the half-sibling in a separate action.

parents had abandoned him for not less than 90 days, failed to provide care and protection for the Child, and failed to provide essentials for the Child. The Mother consented to the adoption, while the Father filed a response stating that he did not consent.

The family court appointed a guardian *ad litem* (GAL) to represent the Child. The GAL filed a report stating that he had interviewed the Child and the Adoptive Parents and concluded that adoption would be in the Child's best interest. The court also appointed counsel to represent the Father at the final hearing held on March 24, 2025. At the conclusion of the hearing, where the parties all testified, the family court made an oral ruling and entered a calendar order, indicating that it found clear and convincing evidence that the Adoptive Parents had met the burden of proof and directed their counsel to tender findings of fact and a judgment of adoption.

On June 6, 2025, 74 days after the hearing, the Father filed a motion to dismiss the petition, arguing that KRS 199.502 was unconstitutional, both facially and as applied, because it did not include a 30-day time frame in which the lower court must decide whether termination of parental rights is justified as in KRS 625.090(6). The Adoptive Parents objected to the motion "as the time set forth in CR 59 has expired." The calendar order entered following the hearing on this motion indicated that the court would take the motion to dismiss under

advisement and that the Adoptive Parents' attorney had been hospitalized and had not yet tendered a judgment or findings as directed.

In July 2025, the family court entered findings of fact and conclusions of law related to the adoption petition, finding it would be in the Child's best interest for adoption to be granted and that all of the legal requirements of KRS 199.520 had been met. By separate judgment entered the same day, the family court granted the petition for adoption. Neither ruling addressed the termination of parental rights nor the Father's motion to dismiss. The Father filed a timely motion pursuant to Kentucky Rules of Civil Procedure (CR) 52.02 and CR 59, requesting additional findings of essential facts relating to the termination of his parental rights, which the court denied in a calendar order because counsel failed to appear.

On August 25, 2025, the family court entered its findings of fact, conclusions of law, and judgment involuntarily terminating the Father's (and the Mother's) parental rights "in accordance with the provisions of KRS 625 *et seq.*" This appeal now follows.

## STANDARDS OF REVIEW

The Father raises essentially two arguments on appeal; namely, the constitutionality of KRS 199.502 regarding the lack of a 30-day time limit and the merits of the decision to terminate his rights. As to the constitutional issue, "[t]his

presents a question of statutory interpretation. 'The interpretation of statutes is a matter of law which we review de novo.'" *A.F. v. L.B.*, 572 S.W.3d 64, 69 (Ky. App. 2019) (quoting *Commonwealth v. Moore*, 545 S.W.3d 848, 850 (Ky. 2018)).

As to the propriety of the termination of parental rights in an adoption without consent, this Court applies a clearly erroneous standard of review, as set forth in *M.S.S. v. J.E.B.*:

> An adoption without the consent of a living biological parent is, in effect, a proceeding to terminate that parent's parental rights. Parental rights are a fundamental liberty interest protected by the Fourteenth Amendment of the United States Constitution. As such, termination of parental rights is a grave action which the courts must conduct with 'utmost caution. So, to pass constitutional muster, the evidence supporting termination must be clear and convincing.
>
> That said, trial courts are afforded a great deal of discretion in determining whether termination of parental rights is appropriate. A family court's termination of parental rights will be reversed only if it was clearly erroneous and not based upon clear and convincing evidence. Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people. Under this standard, we are obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them.
>
> Additionally, since adoption is a statutory right which severs forever the parental relationship, Kentucky courts have required strict compliance with the procedures

provided in order to protect the rights of the natural parents.

638 S.W.3d 354, 359-60 (Ky. 2022) (internal quotation marks, citations in footnotes, and brackets omitted). "[T]he Court will not disturb the trial court's findings unless no substantial evidence exists on the record." *M.E.C. v. Commonwealth, Cabinet for Health and Family Servs*, 254 S.W.3d 846, 850 (Ky. App. 2008).

## ANALYSIS

### 1. Constitutionality of KRS 199.502

The Father's constitutional challenge centers on the lack of a time limitation in which the lower court must decide whether termination of parental rights is justified in a KRS Chapter 199 adoption proceeding. KRS 625.090(6) contains a 30-day mandate, unlike KRS 199.502(2). The Father asserts that KRS 199.502 fails because it "does not assure prompt appellate review in cases where both the Kentucky Supreme Court and the Kentucky Legislature have recognized that the right to prompt appellate review is required."

We certainly understand the Father's frustration with the lack of a time limit in KRS 199.502(2). But despite the Father's argument to the contrary, this Court has directly addressed the due process issue raised in the current appeal and found no merit in it. *See A.F. v. L.B.*, 572 S.W.3d at 70-71. The decision as to whether a time limit should be included in KRS 199.502 is best left to the

-6-

Legislature; we decline to find this statute to be constitutionally infirm and therefore find no merit in the Father's argument on this issue.

## 2. *Termination of Parental Rights*

We shall now consider whether the family court's termination of the Father's parental rights was based upon clear and convincing evidence. The Father asserts that it was not, as the factual findings were perfunctory and insufficient. We agree and hold that the family court's termination of the Father's parental rights was clearly erroneous.

The procedure for private adoptions is set forth in KRS Chapter 199. KRS 199.520(1) provides, in relevant part:

> After hearing the case, the court shall enter a judgment of adoption, if it finds that the facts stated in the petition were established; that all legal requirements, including jurisdiction, relating to the adoption have been complied with; that the petitioners are of good moral character, of reputable standing in the community and of ability to properly maintain and educate the child; and that the best interest of the child will be promoted by the adoption and that the child is suitable for adoption.

KRS 199.502, in turn, sets forth the conditions necessary for an adoption without the consent of the child's biological living parents. This Court, in *A.K.H. v. J.D.C.*, described the necessary elements in such cases as follows:

> [A]n adoption without consent involves four distinct considerations: (1) did the petitioner comply with the jurisdictional requirements for adoption; (2) have any of the conditions outlined in KRS 199.502(1) been

established; (3) is the petitioner of good moral character, of reputable standing in the community and of ability to properly maintain and educate the child as required by the first portion of KRS 199.520(1); and (4) finally, will the best interest of the child be promoted by the adoption, and is the child suitable for adoption as required by the final portion of KRS 199.520(1).

619 S.W.3d 425, 431 (Ky. App. 2021) (footnote omitted).

We note that the best interest of the child is not an element for the court to consider under KRS 199.502 in deciding whether termination is warranted; that is only relevant under KRS 199.520 when deciding whether the adoption is merited.

In the current case, the family court did not address the termination of the Father's parental rights when it originally granted the adoption petition, which led the Father to file a CR 52.02 and CR 59 motion, requesting additional findings of essential facts. He also sought to vacate the judgment based upon these insufficient findings and because the court had not properly considered the evidence he submitted, including that he was married and raising another child and that his out-of-town work schedule was not unusual or a basis to support termination. In addition, he argued that adequate efforts had not been made to reunify him and the Child.

In the August 2025 court calendar, the family court did not provide a reason for the denial of the CR 52.02 and CR 59 motion, other than that the

Father's attorney had not appeared. When the family court did enter its findings of fact as to the termination of the Father's parental rights, the first three findings merely parroted statutory grounds,[3] and the court specifically stated it relied upon these three findings to support its decision that termination was in the Child's best interest. However, the court did not include any case-specific findings to support these general findings.

The court then listed several reasons supporting, again, its conclusion that it was in the Child's best interest that the Father's rights be terminated:

- The Father made no effort to seek custody of the Child during the custodial removal hearing in Pulaski District Court;

---

[3] These parroted grounds are set forth in KRS 199.502(1):

(a) That the parent has abandoned the child for a period of not less than ninety (90) days;

. . . .

(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;

. . . .

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]

- He made no motions in that case to get visitation rights, did not notify the Cabinet when he had supervised visitation rights, and only attended one or two visits;

- He failed to pay a reasonable portion for the Child's care and maintenance when he was financially able to do so.

The court also stated that it had considered the Child's physical, emotional, and mental health and the prospects for his improvement if termination were to be ordered, but, again, did not include any findings specific to this case.

We must agree with the Father that parroting the language of the statute is not sufficient to support the termination of his parental rights and that the record does not support termination. The Father properly raised the issue about absent or insufficient findings in his CR 52 and CR 59 motion, but the family court failed to include sufficient findings in its ruling that addressed the necessary elements of KRS 199.502(1). Instead, the family court focused on the best interest of the child.

In *Sallee v. Sallee*, this Court addressed the necessity of findings of fact:

> In applying CR 52.01, the former Kentucky Court of Appeals, the predecessor to the Kentucky Supreme Court, addressed this issue in *Elkins v. Elkins*, 359 S.W.2d 620 (Ky. 1962), after the adoption of CR 52.01. In *Elkins*, a woman attempted to modify a child support agreement that had been entered into with the father of the children

in conjunction with the divorce. The circuit court denied the mother's motion to modify the child support agreement. In reversing the circuit court by applying CR 52.01, Judge Palmore made the following eloquent observation regarding the necessity of findings of fact in post-decree child support proceedings:

> The order from which this appeal is taken neither contains findings of fact nor discloses the basis on which the trial court's decision was made. This is unfortunate, for a losing party ought not to be deprived of a proper review by the court's failure to record its specific rulings of law and fact. By its failure to conform with CR 52.01 a record that leaves us in the dark in this respect inevitably conduces to a substitution of our own judgment for that of the trial court.

*Elkins*, 359 S.W.2d at 622; *see also Reichle v. Reichle*, 719 S.W.2d 442 (Ky. 1986).

Where evidentiary proceedings are conducted in post-decree matters, the purpose of the mandatory findings of fact under CR 52.01 is to provide a clear record of the basis of the trial court's decision thereby allowing a reviewing court to easily understand the trial court's view of the controversy. *Reichle*, 719 S.W.2d 442. Simply put, a "judge must make findings of fact and not address the matter in a perfunctory manner[.]" *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky. 2011). The failure of the trial court to make any findings of fact is violative of CR 52.01 and may be raised on appeal even without requesting additional findings per CR 52.04. *Id.*; *see also Brown v. Shelton*, 156 S.W.3d 319 (Ky. App. 2004).

468 S.W.3d 356, 359 (Ky. App. 2015).

Here, the family court's findings relative to the grounds listed in KRS 199.502(1) are certainly perfunctory as they parrot the language of the statute. And the family court – twice – stated that the findings it did make were related to the best interest of the child, which is not relevant under this statute. Furthermore, as the Father points out, the family court cited the incorrect chapter when it terminated his parental rights. The court referred to KRS Chapter 625 rather than KRS Chapter 199.

Even if we were to reach the merits of the case, the Adoptive Parents did not submit clear and convincing evidence to support any of the grounds set forth in KRS 199.502(1). The court did not address either the current status of the Father – he had married, was raising a child with his wife, and had maintained his sobriety and employment – or whether there was a reasonable expectation of improvement (or significant improvement) in the Father's ability to care for the Child. *See* KRS 199.502(1)(e) and (g). The Adoptive Parents merely testified that the Father had not provided any support for the Child and that it would be better for the Child to decide whether he wanted to contact the Father when he reached the age of 18.

Furthermore, there is no clear and convincing evidence that the Father had abandoned the Child for not less than 90 days pursuant to KRS 199.502(1)(a), despite his admission that he had not paid any child support and had only visited

with the Child a few times. To establish abandonment under KRS 199.502(1)(a), it must be proven that the parent abandoned the child for a period of not less than 90 days. In *S.B.B. v. J.W.B.*, this Court discussed the abandonment factor, stating:

> Although payment of support is a significant factor in determining whether a parent has abandoned a child, *Hafley v. McCubbins*, 590 S.W.2d 892 (Ky. App. 1979), it is but one factor to be considered. Abandonment is not actually defined in our jurisprudence in the context of termination proceedings. Rather, "abandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." *O.S. v. C.F.*, 655 S.W.2d 32, 34 (Ky. App. 1983).

304 S.W.3d 712, 716 (Ky. App. 2010). "Separation to constitute abandonment and neglect must be [willful] and harsh." *Kantorowicz v. Reams*, 332 S.W.2d 269, 271-72 (Ky. 1959). In addition, "abandonment must be based on more than mere failure to exercise visitation. Distance and inconvenience are no longer barriers to keeping in touch with others as modern technology has made communication ubiquitous and instantaneous, a blessing for absent parents. However, a vast distinction exists between absence and indifference." *S.B.B.*, 304 S.W.3d at 717.

Here, we cannot agree with the family court that the record contains clear and convincing evidence that the Father abandoned the Child, especially in light of his failed attempts to obtain additional visitation that fit into his work schedule and his mother's attendance at court appearances in his place so that he could stay informed. Therefore, we must reverse the family court's order

-13-

terminating the Father's parental rights. And because we are reversing the termination order, we must also reverse the judgment of adoption.

In this Court's view, the appropriate case in which to address custody of the Child is the juvenile action, which was apparently still active at the time of the adoption proceedings. The record in that case was not introduced in the adoption proceedings, and therefore neither this Court nor the family court had the ability to review the basis for that action or what progress had been made by the parties. Our decision in this case does not mean that the Father will now have custody of the Child; rather, the status of the parties shall remain as it is in the juvenile action, with the Child remaining in the permanent custody of the Adoptive Parents. It is up to the Father to address any pertinent issues in that action.

## CONCLUSION

For the foregoing reasons, the order terminating the Father's parental rights and the judgment of adoption are reversed, and this matter is remanded with directions that the family court dismiss the petition for adoption.

ALL CONCUR.


BRIEFS FOR APPELLANT:

William D. Tingley
Covington, Kentucky

BRIEF FOR APPELLEES:

Michael J. Curtis
Catlettsburg, Kentucky

-14-