RENDERED: MAY 15, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1536-ME

B.R. APPELLANT

v.

APPEAL FROM GRAYSON CIRCUIT COURT
HONORABLE BRUCE T. BUTLER, JUDGE
ACTION NO. 23-AD-00046

N.N.; R.N., JR.; M.W.; AND K.R., A
MINOR CHILD APPELLEES

AND

NO. 2024-CA-1537-ME

B.R. APPELLANT

v.

APPEAL FROM GRAYSON CIRCUIT COURT
HONORABLE BRUCE T. BUTLER, JUDGE
ACTION NO. 23-AD-00047

N.N.; R.N., JR.; M.W.; AND A.W., A
MINOR CHILD APPELLEES

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND McNEILL, JUDGES.

ACREE, JUDGE: These appeals are from judgments terminating parental rights and granting adoption petitions without the consent of the parents. We affirm.

## BACKGROUND

B.R. (Mother) and M.W. (Father) are the parents of two daughters, the first born in October 2017 (A.W., Child 1) and the second in November 2018 (K.R., Child 2). N.N. is Mother's mother/the children's maternal grandmother (Grandmother), and R.N., Jr. is Grandmother's husband and the Mother's stepfather/the children's maternal step-grandfather (collectively, Grandparents).

The Cabinet for Health and Family Services became involved with Child 1 and it filed a Juvenile Dependency/Neglect or Abuse (DNA) Petition in Grayson District Court in November 2017 (Case No. 17-J-00243-001) shortly after her birth. In the affidavit, the Cabinet social worker cited an altercation in the hospital and that Mother was not protective of Child 1. The district court granted emergency custody to the Cabinet the same day, finding Child 1 was in immediate danger due to the parents' failure or refusal to provide for her safety and needs. In January 2018, the district court found Child 1 was an abused child while in the parents' care and placed her in the temporary custody of Grandmother. In the

same order, the court suspended the parents' visitation with Child 1 until they appeared before the court.

The Cabinet filed a second DNA petition upon Child 2's birth in November 2018 (Case No. 18-J-00225-001). In the affidavit, the Cabinet social worker stated that, at the time of the birth, Mother tested positive for methamphetamine. She had not worked her case plan to regain custody of her first two children (Child 1 and Mother's older daughter), and Father also had not worked his case plan to regain custody of Child 1. The district court granted emergency custody to the Cabinet the same day and in December 2018, it found Child 2 was an abused or neglected child while in the parents' care and placed her in the temporary custody of Grandparents. Pursuant to the December 2018 order, the parents were to have no contact with Child 2 until they presented to court.

In February 2020, the Cabinet social worker filed an affidavit seeking a review of both cases for closure. At that time, Mother was incarcerated in the Grayson County Detention Center, and the children had been placed with Grandmother, who was able to meet their needs and keep them safe. Following a review that month, the district court ordered that the children remain in the temporary custody of Grandmother and were not to have any contact with the parents. The court permitted the Cabinet to close its cases.

Three years later, in April 2023, an assistant Grayson County Attorney filed motions seeking a review in both cases, stating that Mother had contacted the County Attorney's Office requesting the cases be reopened. Mother was seeking visitation, and she provided a clean drug screen and a certificate establishing she completed an out-patient substance abuse program at Communicare in August 2021. The district court ordered the Cabinet to reopen the cases the following month and directed that once the parents had shown proof of a clean drug screen and completion of the case plan, the Cabinet would have the discretion of permitting supervised visitation at its offices.

In late October 2023, Mother, through appointed counsel, moved the court for unsupervised visitation or for visitation at the Cabinet's discretion with third-party supervisors, or to review visitation in general. The court ordered that the parents could have visitation with the children supervised by a Cabinet-approved third-party. After a review in January 2024, the district court adopted the Cabinet's recommendation that the children remain in Grandparents' custody, that visitation be at the Cabinet's discretion, and that the parents complete their case plans.

Turning now to the circuit court matters currently before this Court on appeal, in November 2023, the month after Mother sought unsupervised visitation in the district court actions, Grandparents filed petitions in Grayson Circuit Court

to adopt the children pursuant to KRS[1] Chapter 199. In the petitions, Grandparents alleged the necessary statutory requirements for adoption and argued that termination of parental rights was proper because the parents had abandoned the children for a period not less than 90 days and they failed to provide essential care and protection for not less than six months or the essentials for their well-being, without a reasonable expectation for improvement or significant improvement. Both Mother and Father denied the allegations in the petitions and sought appointment of counsel, which the court granted. The court also appointed a guardian *ad litem* (GAL) for the children.

The Cabinet filed reports with the circuit court in late January 2024, detailing the backgrounds of the cases and recommending the petitions for adoption be granted if the legal requirements had been met regarding the parents' rights. The GAL also filed reports concluding adoption was in the children's best interest, emphasizing the children's close bond with Grandparents.

The court held the final hearing on the adoption petition over two days in May and August 2024. The parties introduced testimony from Grandparents, both parents, the pastor of the church Grandparents attend, the Cabinet social worker, the visitation supervisor, Mother's sister, and Mother's oldest child (the

---

[1] Kentucky Revised Statutes.

older half-sister of the children).  We shall only set forth the testimony that is germane to our review.

Grandmother testified she had been caring for the children continuously at her residence since their births in 2017 and 2018.  The parents had not provided any child support, care, or clothing for the children.  The first visitation between the parents and the children took place in June or July 2023; they currently had weekly, supervised visitation.  Since that time, the parents had provided birthday and Christmas presents for the children.

Father testified he had no visitation with the children before the summer of 2023; he and Mother wanted to build a foundation before seeking visitation.  He stated Grandmother did not want child support so he believed the parents would not get visitation.

Mother testified that she had been in a conflict with Grandmother since 2017 and was estranged from her family.  She believed Grandparents filed the adoption petitions after she told them she wanted full care of the children.  Mother denied abandoning the children and stated she continuously tried to get in contact with them and get them back.  The plan in the district court juvenile cases was always reunification.  She had completed her case plan, including parenting classes, a domestic violence assessment and follow up, drug testing, and home visits.  She had not been given any opportunity to provide for the children, but she

was ready and willing to do so. She had offered gifts and money multiple times before the case was reopened. She was told Grandparents could not accept anything because that would be considered contact. Mother stated she was open about her goal to get the children back and asked for guidance on several occasions by reaching out to social workers and attorneys.

In her testimony, the Cabinet social worker confirmed the goal in the juvenile actions had never been changed to adoption; the goal was still to return the children to the parents. Mother recently completed her case plan and showed up for every visitation; Father attended visitations when his work schedule permitted.

At the conclusion of the testimony, the circuit court heard argument from the parties, and also permitted the parties to brief their positions. The parents argued that termination of their rights was not warranted, citing the lack of a goal change or resolution in the juvenile actions. Grandparents and the GAL argued that Grandparents met their burden and that termination was warranted.

In November 2024, the court entered a series of orders setting forth its findings of fact and conclusions of law, terminating parental rights, and granting the petitions for adoption. In its findings related to termination of parental rights, the court discussed the evidence presented at the hearing:

> Conflicting testimony was produced as to what extent [each child] has been neglected by her parents. [Grandmother] testified simply that neither parent provided any form of parental care or financial support

-7-

while the district court's order was in place. The overall message of [Father's] testimony was that he has visited his daughter[s] a few times since being allowed visitation and wishes to play a larger [role] in [their lives], but over the past several years he has been largely absent. [Mother] testified that she has consistently wished to be a mother to her daughter[s] but has been unable to due to the district court's order and her estrangement from [Grandmother]. She expressed that she tried multiple times to provide food, money, or clothing but was denied.

Based upon its findings, the court concluded that Grandparents had proven by clear and convincing evidence that three grounds supported termination of parental rights. First, the parents abandoned the children for a period of not less than 90 days pursuant to KRS 199.502(1)(a), finding that the parents had abandoned them for nearly five years, as neither "took sufficient steps to reopen the court case or petition the court for visitation until 2023." Second, grounds existed under subsection (e) (failure to provide essential care and protection) because "[n]either parent provided any care for [the children] from 2018 until 2023 when limited visitation began." And third, grounds existed under subsection (g) (failure to provide essentials for the children's well-being) because "[n]either parent has paid child support or provided anything for the children's daily needs, even after visitation restarted in 2023." Mother appeals.[2]

---

[2] Grandparents question in their brief whether Mother is appealing from a defect in the judgments or due to lack of evidence. Based upon our review of Mother's brief, we believe her appeals are based upon whether there is a lack of evidence to support the termination of her parental rights.

## STANDARD OF REVIEW

This Court applies a clearly erroneous standard in reviewing the propriety of an adoption without consent proceeding:

> An adoption without the consent of a living biological parent is, in effect, a proceeding to terminate that parent's parental rights. Parental rights are a fundamental liberty interest protected by the Fourteenth Amendment of the United States Constitution. As such, termination of parental rights is a grave action which the courts must conduct with utmost caution. So, to pass constitutional muster, the evidence supporting termination must be clear and convincing.
>
> That said, trial courts are afforded a great deal of discretion in determining whether termination of parental rights is appropriate. A family court's termination of parental rights will be reversed only if it was clearly erroneous and not based upon clear and convincing evidence. Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people. Under this standard, we are obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them.
>
> Additionally, since adoption is a statutory right which severs forever the parental relationship, Kentucky courts have required strict compliance with the procedures provided in order to protect the rights of the natural parents.

*M.S.S. v. J.E.B.*, 638 S.W.3d 354, 359-60 (Ky. 2022) (internal quotation marks, brackets, and citations in footnotes omitted). "[T]he Court will not disturb the trial

court's findings unless no substantial evidence exists on the record." *M.E.C. v.*

*Commonwealth, Cabinet for Health and Family Servs.*, 254 S.W.3d 846, 850 (Ky.

App. 2008).

## ANALYSIS

The procedure for private adoptions is set forth in KRS Chapter 199.

KRS 199.520(1) provides, in relevant part:

> After hearing the case, the court shall enter a judgment of adoption, if it finds that the facts stated in the petition were established; that all legal requirements, including jurisdiction, relating to the adoption have been complied with; that the petitioners are of good moral character, of reputable standing in the community and of ability to properly maintain and educate the child; and that the best interest of the child will be promoted by the adoption and that the child is suitable for adoption.

KRS 199.502, in turn, sets forth the conditions necessary for an adoption without

the consent of the child's biological living parents. This Court, in *A.K.H. v. J.D.C.*,

described the necessary elements in such cases as follows:

> [A]n adoption without consent involves four distinct considerations: (1) did the petitioner comply with the jurisdictional requirements for adoption; (2) have any of the conditions outlined in KRS 199.502(1) been established; (3) is the petitioner of good moral character, of reputable standing in the community and of ability to properly maintain and educate the child as required by the first portion of KRS 199.520(1); and (4) finally, will the best interest of the child be promoted by the adoption, and is the child suitable for adoption as required by the final portion of KRS 199.520(1).

619 S.W.3d 425, 431 (Ky. App. 2021) (footnote omitted). The best interest of the child is not an element for the court to consider under KRS 199.502 in deciding whether termination is warranted; that consideration is only relevant under KRS 199.520 when deciding whether to grant an adoption petition.

KRS 199.502 sets forth a list of grounds, at least one of which a petitioner must establish before an adoption may be granted without the consent of the child's biological living parents. *See C.J. v. M.S.*, 572 S.W.3d 492, 496 (Ky. App. 2019) ("If the adoption is sought without consent, KRS 199.502(1) requires proof as part of the adoption proceedings that one of the conditions set forth in subjections (a)-(j) exists with respect to the child at issue."). The grounds relevant to the present appeals are listed in KRS 199.502(1)(a), (e), and (g).

We first consider the abandonment ground. To establish abandonment under KRS 199.502(1)(a), the petitioner must prove the parent abandoned the child for a period of not less than 90 days. In *S.B.B. v. J.W.B.*, this Court discussed the abandonment ground, stating:

> Abandonment is not actually defined in our jurisprudence in the context of termination proceedings. Rather, "abandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." *O.S. v. C.F.*, 655 S.W.2d 32, 34 (Ky. App. 1983).

304 S.W.3d 712, 716 (Ky. App. 2010). "Separation to constitute abandonment and neglect must be [willful] and harsh." *Kantorowicz v. Reams*, 332 S.W.2d 269,

-11-

271-72 (Ky. 1959). "Although payment of support is a significant factor in determining whether a parent has abandoned a child, *Hafley v. McCubbins*, 590 S.W.2d 892 (Ky. App. 1979), it is but one factor to be considered." *S.B.B.*, 304 S.W.3d at 716. In addition, "abandonment must be based on more than mere failure to exercise visitation. Distance and inconvenience are no longer barriers to keeping in touch with others as modern technology has made communication ubiquitous and instantaneous, a blessing for absent parents. However, a vast distinction exists between absence and indifference." *Id.* at 717.

Mother contends there was a lack of evidence she willfully abandoned the children. She argues she cooperated with the Cabinet and improved herself enough to have the cases reopened in May 2023, she visited with the children and sought extended visitation to maintain a parental bond, and the COVID-19 pandemic lengthened the time for the juvenile actions to be litigated. She also points out that the district court in the juvenile actions had suspended her visitation with the children, which she argued could not be used against her for abandonment purposes, citing this Court's holding in *Wright v. Howard*:

> [A] "Catch 22" situation for Wright was created in the Wright's dissolution action by the trial court putting on indefinite hold Wright's status to visit with the twins and his responsibility to support them. It denied his right to visit and required no support, all subject to further orders of the trial court. This status in both regards still exists. These "Catch 22" circumstances negate any finding that his so called abandonment, desertion or neglect was by

clear and convincing proof that evidenced a settled purpose to forego all his parental duties and all parental claims to the children. Without such finding there can be no finding that . . . grounds [under the prior statute] to involuntary terminate exist.

711 S.W.2d 492, 497 (Ky. App. 1986). We agree with Grandparents that the holding in *Wright* is not analogous here because the district court suspended Mother's right to visitation for the safety of the children, and she took no action to regain her visitation rights for more than four years.

Our review of the record establishes that the circuit court based its finding that Mother abandoned the children on clear and convincing evidence. The children had been in the custody of Grandparents since shortly after their births in 2017 and 2018, with the district court suspending both parents' ability to have contact with the children since then, and the Cabinet closed its cases the month before the COVID-19 pandemic began in 2020 due to the parents' failure to work on their case plans. Not until 2023 did Mother officially seek relief from the district court's no contact orders and request visitation with the children, which is far greater than the 90-day minimum set forth in the statute.

We disagree with Mother's assertion that the circuit court failed to consider her recent efforts and sobriety. On the contrary, the circuit court did consider these factors, but this information could not overcome Mother's lack of effort to regain contact with the children for several years. In *R.P., Jr. v. T.A.C.,*

-13-

this Court rejected a similar argument in which the father challenged the court's findings, arguing that it disregarded specific testimony:

> Father challenges those findings by the court as erroneous because they disregarded testimony in which he and his parents alleged that Mother rebuffed their efforts to schedule visits with Child. However, the standard of clear and convincing evidence does not mean uncontradicted evidence. *W.A. v. Cabinet for Health and Family Services*, 275 S.W.3d 214, 220 (Ky. App. 2008). It is the prerogative of the court to determine the credibility of witnesses and the weight of the evidence. *R.C.R. v. Commonwealth Cabinet for Human Resources*, 988 S.W.2d 36, 39 (Ky. App. 1998).

469 S.W.3d 425, 427-28 (Ky. App. 2015).

We therefore find no merit in Mother's arguments and hold that the circuit court did not commit any error in concluding that Mother had abandoned the children pursuant to KRS 199.502(1)(a).

Grandparents are only required to prove one of the conditions set forth in KRS 199.502(1), and they have done so by establishing that Mother abandoned the children pursuant to subsection (a). *See C.J. v. M.S.*, *supra*. Therefore, we need not reach whether Grandparents established the conditions set forth in subsections (e) and (g) and hold that the circuit court did not err in terminating Mother's parental rights or in granting the petitions for adoption.

## CONCLUSION

For the foregoing reasons, the judgments of the Grayson Circuit Court terminating Mother's parental rights (and granting the petitions for adoption) are affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Stephen G. Hopkins
Hardinsburg, Kentucky

BRIEF FOR APPELLEES N.N. AND R.N.:

William D. Tingley
Covington, Kentucky